UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA



FILED
U.S. DIST COURT
. . . . LA

2008 AUG 27 P 2: 40

BY DEPUTY CLERK

MALINDA E. LARKINS

VERSUS

WAL-MART ASSOCIATES, INC.

CIVIL ACTION

NO. 06-462-FJP-CN

**RULING**

This matter is before the Court on defendant's motion for summary judgment.[1]  Plaintiff has filed an opposition to the motion.[2]  For reasons which follow, defendant's motion for summary judgment is granted.[3]

**I.    Factual Background**

The plaintiff has filed this suit seeking damages under Title VII of the Civil Rights Act of 1964[4] asserting claims of sexual harassment and retaliation and state law claims under Louisiana Revised Statutes 23:967.

Malinda Larkins ("Larkins" or "plaintiff") became employed by Wal-Mart Associates, Inc. ("Wal-Mart") in 1992 as a Door Greeter at the Donaldsonville, Louisiana store.  She held a variety of job

_____

[1] Rec. Doc. No. 20.

[2] Rec. Doc. No. 25.

[3] The Court has considered all of the contentions of the parties whether or not specifically discussed in this opinion.

[4] 42 U.S.C. § 2000(e), *et seq.*

Doc#45119                                          1

titles over the course of her employment with Wal-Mart, including Cashier in Electronics, Customer Service Manager/Service Desk, and Stocker.

### A.   Larkins' Work History and Wal-Mart's Discipline System

Wal-Mart utilizes a progressive discipline system for its employees which begins with a verbal coaching, then progresses to a written coaching, followed by a decision-making day, and ultimately termination.   On August 23, 2003, plaintiff received a written coaching for working overtime without permission, which is a violation of company policy.   On March 31, 2004, while on the clock, Larkins attempted to process the return of clothing that had been given to her personally, which is also prohibited by company policy for two reasons.   First, employees are not permitted to perform personal transactions while on duty; and second, employees are not allowed to perform functions such as a return transaction on their own purchases.   Fortunately for plaintiff, two other employees interrupted the processing off this attempted return transaction.   Had Larkins completed this transaction, Wal-Mart contends it would have had grounds to terminate her employment immediately.   Wal-Mart states that because Larkins failed to complete the transaction, it was able to impose a written coaching on April 12, 2003, accompanied by a "decision-making day."   In the event an employee receives a "decision-making day," the employee is sent home with pay to evaluate the mistake and write a plan of

corrective action.   Further, under the defendant's discipline policy, any additional performance issues or policy violations which occur within a year of the decision-making day result in immediate termination.

The Wal-Mart discipline policy also requires that employees take a 30 minute lunch break any time they work a shift of more than six hours.  If an employee remains on the clock one minute past six hours and fails to take a lunch break, the employee has violated the company's policy and is subject to a disciplinary coaching.   On March 14, 2005, Larkins worked more than six hours and failed to clock out for a lunch break.   Larkins claimed she was unable to clock out because her employee badge had fallen beneath some heavy pallets and she was unable to reach it.   This explanation was accepted by Larkins' direct supervisor, Store Manager Linda Beachum, and she was not disciplined for this infraction.   However, on March 21, 2005, Larkins again worked more than six hours without clocking out for lunch.   This time, Larkins' explanation for the violation of policy was deemed unacceptable.   Because Larkins' disciplinary record contained a decision-making day within the previous year, Wal-Mart contends the only action Wal-Mart could take against Larkins was termination.   Larkins was advised on March 22, 2005, that she was terminated because of her meal policy violation and her existing disciplinary record.

During the relevant time period, Linda Beachum was the Store

Manager and plaintiff's direct supervisor.  Plaintiff concedes that she and Beachum had a good relationship until the time of her termination.  In fact, at the time of her termination, Beachum advised plaintiff to wait 30 days and re-apply for her position at Wal-Mart.[5]

### B.   Larkins' Claim of Sexual Harassment

Larkins contends that during the course of her employment with Wal-Mart, she was subjected to sexual harassment by two co-workers, Mark Guilfo and Gerald Robertson,[6] from sometime in 2003 until her termination in 2005.  Specifically, plaintiff alleges that Robertson began making sexually harassing comments about her body in September of 2003.  Plaintiff alleges that while eating lunch on one occasion, Robertson told her "it sure would be fun for you to suck my bone." During this encounter, Robertson also allegedly put his hand on his penis and told plaintiff "it is good when it's hard."  Plaintiff contends she told Robertson to stop making such comments to her. However, on a later date, Robertson again told plaintiff her clothing looked good on her buttocks and "he sure could use some of

_____

[5]Plaintiff did attempt to re-apply for her position with Wal-Mart through Wal-Mart's computerized re-application system, but plaintiff testified that she was required to agree with the reasons for her termination, and when she would not do so, the program would not allow her to go further in the application process. Deposition of Malinda Larkins, pp. 130-32.

[6]In the pleadings, Gerald Robertson is sometimes referred to as Gerald "Robinson."

that now.  It must be good." During another lunch break while plaintiff was eating cookies and ice cream, plaintiff alleges Robertson suggested to plaintiff that they could lick the ice cream off of each other.

Plaintiff admits she and Mark Guilfo were close friends who knew each others' families and attended church together even prior to plaintiff's employment with Wal-Mart. Plaintiff alleges that the nature of their relationship changed sometime in 2003 when Guilfo allegedly began making sexual comments to her. Plaintiff contends the majority of these comments were made on lunch breaks. Specifically, plaintiff contends Guilfo told plaintiff that he wanted to "feel on her." On another occasion, Guilfo allegedly told plaintiff that her "breasts were getting bigger, were round like an orange and should be juicy." On a later date, Guilfo allegedly commented to plaintiff that his "cock was hard and he wanted to get his cock unhard." During one particular lunch break, plaintiff states that she was eating cherries and Guilfo asked how the cherries tasted. When plaintiff responded that the cherries were good, plaintiff alleged Guilfo asked plaintiff is she had a cherry "between her legs." On still another occasion, plaintiff claims that Guilfo told her he was "ready for her, getting hard" and requested that the plaintiff "give him a feel." Plaintiff also contends that on numerous occasions, Guilfo would touch her buttocks when she passed him. Plaintiff also contends Guilfo's sexual

Doc#45119                              5

comments were constant and that she repeatedly warned him to stop at least three or four times per week.  She also claims she advised Guilfo that she would report his conduct to Wal-Mart if he did not stop his alleged sexual comments and actions.

Wal-Mart has an anti-harassment policy which is located in its Associate Handbook and covers the type of conduct alleged by the plaintiff in this lawsuit.  Plaintiff acknowledged that she received this handbook and was aware of Wal-Mart's Ethics Hotline and open-door policy at the time these actions allegedly occurred.  Plaintiff claims that she first notified Chelo Miguel,[7] an Assistant Manager at Wal-Mart, of the alleged sexual harassment, but no remedial action was taken as a result of her complaint.  Several months later, Linda Beachum was notified by other employees that plaintiff was "not herself," and Beachum approached the plaintiff to determine whether she was having any problems.  It was on this occasion that plaintiff first made Beachum aware of her complaints of sexual harassment.  Beachum advised Larkins to write a statement of her complaint, and Beachum immediately reported the complaint to Houston Hollinger, the District Manager, and then proceeded to conduct an investigation.  During this investigation, both alleged harassers were questioned and instructed to give statements.  Both of the alleged harassers denied plaintiff's allegations.  During the time

---

[7]In the pleadings, Chelo Miguel is also referred to as Chelo "McGill."

of the alleged incidents, there were no witnesses who heard the comments or saw the harassment. Thus, the investigation was completed with no disciplinary action taken on any party.

Following this investigation, plaintiff concedes Gerald Robertson ceased all sexual harassment. However, plaintiff contends that although Guilfo initially stopped harassing plaintiff, he resumed his prior conduct shortly thereafter. Plaintiff claims she left a letter on Beachum's desk advising her of Guilfo's current actions. She also tried to speak with Beachum about the alleged incidents but Beachum apparently did not have time to meet with her. Beachum testified in her deposition that after her initial investigation, she never received another letter or statement from plaintiff complaining about sexual harassment.

After filing a complaint with the EEOC, plaintiff filed this lawsuit asserting claims of sexual harassment and retaliation under Title VII, and retaliation and reprisal under Louisiana Revised Statutes 23:967.

The Court now turns to a discussion of the applicable law and analysis.

## II.  Law and Analysis

### A.   Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."[8]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there

---

[8]Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[9]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[10]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[11]*Id.* at 1075.

is a genuine issue for trial.[12]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[14]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

[12]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[13]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[14]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[15]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[16]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

summary judgment."[17]   The Court now turns to a discussion of each of plaintiff's claims.

**B.   Sexual Harassment Claim**

Larkins claims she was subjected to a hostile work environment because of the alleged sexual harassment by Guilfo and Robertson. Furthermore, plaintiff contends that since Guilfo was a "supervisor," the *Faragher/Ellerth* framework for supervisor sexual harassment would apply to this case. In support of its motion, Wal-Mart contends Guilfo was not plaintiff's supervisor and is not a "supervisor" for purposes of Title VII, despite his technical job title of "customer service manager."[18]

The Court finds that Guilfo is not a supervisor under the facts of this case. It is clear that plaintiff's own deposition testimony shows she knew Guilfo was not her supervisor. She testified that at no point while working together was Guilfo her supervisor and she

---

[17]*Id.* at 248, 106 S.Ct. at 2510.

[18]An employer is vicariously liable for a supervisor's sexually harassing behavior where a tangible employment action is taken against the employee by the harassing supervisor. Where there is no tangible employment action, the employer may avoid liability by raising the two-pronged *Faragher/Ellerth* affirmative defense which requires: (1) that the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or avoid harm otherwise. *Casiano v. AT&T Corporation, et al*, 213 F.3d 278, 284 (5th Cir. 2000).

was aware that they were on the "same level."[19]   Therefore, the *Faragher/Ellerth* framework does not apply to this case.

In any Title VII sexual harassment case, a plaintiff must establish the following: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3)  the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[20]

In *Meritor Savings Bank v. Vinson*, the United States Supreme Court held that in order for a plaintiff to establish actionable harassment, such conduct must be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment.[21]  An employee need not suffer the loss of pay, benefits, or the job itself in order to have a claim for sexual harassment.   The Court further held that in order to establish actionable harassment, the conduct must be both

---

[19]*See* Deposition of Malinda Larkins, p. 72, lines 4-11.

[20]*Harvill v. Westward Communications, L.L.C.*, 433 F. 3d 428, 434 (5th Cir. 2005), citing *Woods v. Delta Beverage Group, Inc.*, 274 F. 3d 295, 298 (5th Cir. 2001).

[21]477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986).  In *Harvill v. Westward Communications, L.L.C.*, the Fifth Circuit Court of Appeals clarified though it may have previously cited the standard as "severe AND pervasive," the appropriate standard is "severe OR pervasive."  433 F. 3d 428, 434 (5th Cir. 2005).

subjectively and objectively offensive.[22]  Specifically, plaintiff must prove that a reasonable person would have been offended by the conduct (objective element).  In addition, plaintiff must prove that she was actually offended by the conduct (subjective element).[23] Whether an environment is hostile or abusive is determined by looking at all of the circumstances, including the "frequency of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[24]

Wal-Mart contends plaintiff has failed to establish a *prima facie* case of sexual harassment because the conduct complained of is not sufficiently severe or pervasive to have affected a term, condition, or privilege of plaintiff's employment.  Wal-Mart also argues plaintiff has failed to establish that Wal-Mart knew or should have known of the harassment but failed to take prompt remedial action.

### 1.   Severe or Pervasive Conduct

The Court must determine whether the alleged facts, viewed in the light most favorable to Larkins, constitute severe or pervasive sexual harassment.  A careful review of the record reveals that

---

[22]*Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283 (1998).

[23]*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370 (1993).

[24]*Id.* at 23.

Larkins has not established the alleged harassment was so severe or pervasive that it affected a term, condition, or privilege of her employment.  Any holding to the contrary would conflict with settled jurisprudence and not be supported by the facts in this case.

The Fifth Circuit Court of Appeals has declined to recognize conduct more egregious than that allegedly committed by Robertson and Guilfo as actionable sexual harassment in prior decisions.[25] Most notably, the court in *Shepherd v. Comptroller of Public Accounts of the State of Texas* affirmed a summary judgment in favor of the employer finding that the plaintiff failed to show the alleged conduct was severe or pervasive as to alter a term, condition, or privilege of employment.[26]  In that case, the plaintiff alleged that a male co-worker harassed her over a period of two years when he stared at her, touched her arm on several occasions, rubbed one of his hands from his shoulder down to her wrist while standing beside her, and made graphic remarks to the plaintiff.  The allegations in the *Shepherd* case were arguably more severe or pervasive than those alleged by Larkins in the instant case.

The Fifth Circuit also affirmed summary judgment in another case involving conduct similar to that alleged by Larkins.   In

---

[25]See e.g., *Williams v. U.S. Dept. of Navy*, 149 Fed. Appx. 264 (5th Cir. 2005); *Hockman v. Westward Communications, L.L.C.*, 407 F. 3d 317 (5th Cir. 2004).

[26]168 F.3d 871 (5th Cir. 1999).

*Hockman v. Westwood Communications, L.L.C., et al.*,[27] the plaintiff claimed that her immediate supervisor commented on her body and her behind, made comments to plaintiff on the body of other employees, slapped plaintiff's behind with a newspaper, brushed up against her breasts and behind, attempted to kiss her, asked her to come in early so they could be alone together, and once stood in the doorway of the ladies' room to watch plaintiff wash her hands.[28]  The Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendant, finding that Hockman failed to establish that the harassing behavior was so severe or pervasive as to affect a term, condition, or privilege of her employment.[29]

Plaintiff's allegations, while offensive,[30] are at least similar to, if not less extreme, than the conduct set forth in the Fifth Circuit cases discussed above.  While the alleged conduct by Robertson and Guilfo may have been inappropriate and even offensive to plaintiff, it does not rise to the level required by the law to be severe or pervasive under the facts of this case.

Further, Larkins' own conduct belies any characterization of Guilfo's conduct as severe or extreme.  When asked about the nature

---

[27]407 F.3d 317(5th Cir. 2004).

[28]*Id.* at 321-22.

[29]*Id.* at 329.

[30]The Court obviously does not approve or condone such action in the workplace.

of her relationship with Guilfo, plaintiff testified that "[m]e and Mark [Guilfo] was tight."[31]  Plaintiff also admitted that even after the alleged harassment, she still considered Mark her friend and did not want to cause him to lose his job.[32]  Plaintiff also admitted that she continued to have lunch with Guilfo even after the sexual harassment investigation and despite the fact that it was most often during lunch breaks that she alleges many of the comments were made.[33]  The Court finds that a reasonable person in plaintiff's position who is allegedly suffering from such severe or pervasive sexual harassment would make every effort to avoid her harasser. Larkins' behavior simply undermines any argument that the alleged conduct meets the legal definition of severe or pervasive.

### 2.    Wal-Mart's Knowledge and Prompt Remedial Action

As set forth above, Wal-Mart has a well-established anti-harassment policy, an ethics hotline, and an open-door policy whereby employees can make complaints without fear of reprisal. Plaintiff claims she reported the sexual harassment first to an Assistant Manager, Chelo Miguel, but nothing was done by Wal-Mart and the harassment continued.  However, a careful review of the record reveals that this "reporting" was not in compliance with the letter or spirit of Wal-Mart's anti-harassment policy.  First,

---

[31]*See* Deposition of Malinda Larkins, p. 79, line 25.

[32]*Id.* at p. 88.

[33]*Id.* at p. 146.

Miguel was not the proper person within the chain of command to whom such conduct should have been reported.  Plaintiff admitted in her deposition that Miguel held the same rank as plaintiff.  Therefore, plaintiff did not complain to a member of management as required by the defendant's policy.[34]  As Wal-Mart correctly points out in its supporting memorandum, Title VII requires the complaint be made to someone "who has the power to take action to remedy the problem."[35]  In this regard, the Fifth Circuit has held:

> The "management" and "remedial power" standards blur together, however, when we examine who may be considered "management," for to be considered a "manager," a person must have the ability to exert control over employees.[36]
>
> This includes someone with the power not only to hire and fire the offending employee but also to take disciplinary action, to provide significant input into employment decisions, to instruct the offending employee to cease the harassing behavior, or to implement other means of taking remedial action.  *See Williamson*, 148 F.3d at 466 (holding that "employer" includes supervisor "with some authority to address the harassment problem" in organization with strong chain of command where supervisor could direct offender to cease and discipline if offender failed to comply); ... *Nash*, 9 F.3d at 404; *Waltman*, 875

---

[34]*Id.* at pp. 176-77.

[35]*Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999), citing *Nash*, 9 F.3d at 404.

[36]*Id.*, citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 478 (5th Cir. 1989); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993)(discussing failure of plaintiff to complain to "company heirarchy").

> F.2d at 478. **Thus, the key to whose knowledge may be imputed to the employer is remedial power: There is no actual knowledge until someone "with authority to address the problem" is notified.** *Nash*, 9 F.3d at 404.[37]

Wal-Mart contends Chelo Miguel was not a higher echelon manager with the power to take remedial action over the alleged offenders. In fact, it is undisputed that Miguel was an hourly-paid "customer service manager." Wal-Mart also argues that plaintiff's attempts to use the fact that the term "manager" was in Miguel's title are without merit. Wal-Mart also contends that plaintiff was required by the anti-harassment policy to pursue higher echelon managers with her complaints if unsuccessful at the lower level. The evidence in the record fails to establish that plaintiff ever followed up on her complaint to Miguel, nor does the record reflect that she approached any of defendant's employees who were in higher management.[38] The record is clear that it was Linda Beachum who approached the plaintiff about the alleged harassment in 2004. The record also establishes that plaintiff failed to

---

[37] *Id.* (emphasis added).

[38] The Court notes that it is disingenuous in plaintiff's opposition memorandum to imply that plaintiff contacted Beachum by stating that she reported the alleged harassment to Chelo Miguel and then sent a letter in February 2004 to Linda Beachum inquiring about the status of her complaints. The record actually shows that plaintiff **never** initiated contact with Beachum, but rather that it was Beachum who approached plaintiff to inquire about her change in attitude and who requested that plaintiff put something in writing. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment, Rec. Doc. No. 25, pp. 1-2.

initiate contact with management as required by the defendant's policy to report any of the alleged incidents.  The record also reflects that Beachum took immediate steps to investigate the plaintiff's allegations, questioned and counseled both accused harassers regarding the complaint, and advised plaintiff to contact her if the alleged problems continued.  Plaintiff admitted that following this investigation, all harassment by Robertson ceased and initially the harassment by Guilfo ceased as well.[39]

Plaintiff contends she contacted Beachum by letter when Guilfo allegedly resumed his sexual harassment of her.  Beachum testified that she never received any other letter, statement or complaint from plaintiff about sexual harassment, and she believed the problem was resolved.  When plaintiff was questioned in her deposition why she never asked Beachum whether Beachum had received her complaint, she responded that she had no further discussions with Beachum on this issue "because she [Beachum] was too busy."[40]

Plaintiff's failure to notify Beachum or Houston Hollinger of her complaints also supports the Court's finding because it is simply inconsistent with plaintiff's prior history of making complaints to management regarding work-related problems which is clearly established by the record and plaintiff's own deposition testimony.  The record contains numerous instances where Larkins

---

[39]*See* Deposition of Malinda Larkins, p. 106-111.

[40]*Id.* at pp. 70-71 (Depo from September 21st)

was, by her own definition, very "outspoken" in complaining about any problem regarding work, especially the repeated problems she was having with the cashiers.   However, plaintiff never once brought her sexual harassment claims to the store manager or the district manager, both of whom had the authority to help her and who had previously received her other work-related complaints in the past.   Beachum testified in her deposition that it was inconsistent with plaintiff's personality not to complain to her supervisors at work if something bothered her.[41]   On February 28, 2004, Larkins notified Hollinger about her dispute with the cashiers but inexplicably never once mentioned that she was being sexually harassed at work.[42]   This evidence undermines plaintiff's argument that she properly and promptly reported the alleged harassment but Wal-Mart failed to take sufficient action.

Linda Beachum also testified that the first time she was made aware of the alleged sexual harassment was when she approached Larkins about her decision-making day.[43]   Beachum also testified that she immediately contacted Houston Hollinger to report the problem and get instructions on how to begin her investigation of Larkins' claims.   The investigation began immediately and resulted in the cessation (at least initially) of the harassment by both

---

[41]*See* Deposition of Linda Beachum, p. 50.

[42]*See* Deposition of Malinda Larkins (Sept. 21), p. 108-110.

[43]*See* Deposition of Linda Beachum, at p. 10.

alleged harassers.[44]

The Court finds that Larkins failed to promptly and properly report the alleged sexually harassing conduct to the proper Wal-Mart officials.[45]   Plaintiff has likewise failed to establish a genuine issue of material fact as to whether Wal-Mart took prompt remedial action after her complaint was made.   Thus, plaintiff has failed to establish a *prima facie* case of sexual harassment and summary judgment shall be granted in favor of Wal-Mart on this claim.   The Court now turns to a discussion of plaintiff's retaliation claim.

### C.   Larkins' Retaliation Claim

Larkins also claims that her termination was in retaliation for making the sexual harassment complaints.   Wal-Mart contends all disciplinary actions taken against plaintiff and her ultimate termination were related to plaintiff's prior work conduct which had nothing to do with any sexual harassment claims.

---

[44]*Id.* at p. 12.

[45]Plaintiff contends Support Manager Lois Dupaty witnessed an inappropriate comment made by Robertson to Larkins and advised Robertson that he should not talk that way to Larkins.   Plaintiff argues that Dupaty's failure to report the comments to management was a violation of Wal-Mart's reporting policies.   This argument is likewise without merit for several reasons.   First, the simple fact that Dupaty's title included the word "manager" does not render her a member of management with remedial authority.   Second, plaintiff attempts to place greater reporting responsibility on an alleged witness to one questionable comment than she places on herself as shown by her own failure to properly and promptly report the alleged conduct.

The plaintiff's work history was extensively set forth earlier in this opinion.  Plaintiff does not dispute that she committed the infractions for which she was disciplined and ultimately terminated.  It appears that plaintiff only disputes whether the reasons she offered in defense for such infractions were legitimate or properly considered by Wal-Mart.

To prove her retaliation claim, plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.[46]  Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.[47]  To establish a causal connection, a plaintiff must show that, "but for" her complaints concerning the alleged harassment, she would not have suffered the adverse employment action.[48]  Thus, "even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an

---

[46] *See, Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003); *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

[47] *Ackel*, 339 F.3d at 385 citing *Green v. Adm'rs of Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

[48] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 402-03 (5th Cir. 2000).

employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct."[49]

Clearly, requirements (1) and (2) above are met by plaintiff because she did engage in protected activity by complaining about sexual harassment and she did suffer an adverse employment action by being terminated.  When evaluating whether an adverse employment action was causally related to the protected activity, the court must carefully consider the "temporal proximity" between the protected activity and the adverse employment action.[50]  However, "while close timing between an employee's protected activity and an adverse employment action can establish a *prima facie* case of retaliation, close timing alone is insufficient to establish pretext."[51]

Plaintiff has failed to satisfy the third requirement mandated by the Fifth Circuit:  a causal connection between her complaints and her termination.  Larkins has simply failed to present any summary judgment evidence showing a retaliatory motive in Wal-

---

[49]*Rubinstein*, 218 F.3d at 402-03.

[50]*Mauder v. Metropolitan Transit Authority of Harris County, Texas*, 446 F.3d 574 (5th Cir. 2006)(citing *Wilson v. Lemington Home for the Aged*, 159 F. Supp.2d 186, 195-96 (W.D. Pa. 2001)).

[51]*Campbell v. England*, 234 Fed. Appx. 183, 2007 WL 1454542 (5th Cir. May 17, 2007)(citing *Strong v. Univ. HealthCare Sys.*, 482 F.3d 802, 808 (5th Cir. 2007); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).

Mart's decision to terminate her, nor does this establish a material issue of fact in dispute which would then require the Court to deny defendant's summary judgment. The record reveals that nearly a year passed between plaintiff's first complaint of harassment to Beachum in April of 2004 and her termination date in March of 2005. Had Wal-Mart been looking for an opportunity to terminate plaintiff, there were other instances when plaintiff could have been terminated prior to the last meal violation discussed earlier in this opinion. Because Beachum accepted plaintiff's explanation for the first meal violation (plaintiff being unable to locate her badge), plaintiff was not terminated on March 14, 2005. It is clear that Beachum had the authority and sufficient justification to terminate plaintiff at that time if she was simply looking for an opportunity to retaliate against the plaintiff. Plaintiff's argument on the retaliatory claim strains logic and is inconsistent with the actions taken by the defendant under the facts of this case.

Plaintiff also argues that she had reasonable explanations for the infractions for which Wal-Mart took disciplinary actions and ultimate termination against the plaintiff. However, the Court is to consider "whether the termination was done with discriminatory intent, not whether it was correct from a business, ethical, or

personal perspective."[52]   Based on the record of plaintiff's
employment violations and Wal-Mart progressive discipline policy,
plaintiff has failed to show that defendant retaliated against her.
It is not for this Court to decide whether Wal-Mart made the
correct decision with regard to plaintiff's discipline and
termination.   Instead, the issue before the Court is whether Wal-
Mart made such decisions with a retaliatory motive.   It is clear
from the record in this case that no retaliatory motive has been
shown under the facts of this case, nor has plaintiff created a
material issue of fact on plaintiff's retaliatory claim.

Beachum's reaction to plaintiff's complaints and her
subsequent investigation do not support plaintiff's claim of
retaliation.   Plaintiff had already engaged in conduct warranting
discipline before Beachum had ever been notified of the sexual
harassment complaints.   Simply stated, plaintiff has simply failed
to set forth any evidence to show retaliation in this case or to
show there was a material issue of fact in dispute on this issue.
There being no genuine issue of material fact in dispute regarding
Larkins' retaliation claim, defendant is entitled to summary
judgment as a matter of law on this claim under the facts of this

---

[52]*Morrison v. Weyerhaeuser Co.*, 119 Fed. Appx. 581, 585, 2004
WL 2830846 (5th Cir. Dec. 10, 2004)(citing *Sandstad v. CB Richard
Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)("[An employer] is
entitled to be unreasonable so long as it does not act with
discriminatory animus"); see also *Mayberry v. Vought Aircraft Co.*,
55 F.3d 1086, 1091 (5th Cir. 1995)).

case.

   **D.   State Law Claims**

Having dismissed the federal claims, the Court declines to exercise jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Therefore, the state law claims are dismissed without prejudice.  Defendant's motion for summary judgment on the state law claims is denied without prejudice as moot.

**III. Conclusion**

For the reasons set forth above, the Court finds that there are no genuine issues of material fact which would preclude the Court from granting summary judgment in favor of Wal-Mart on all federal claims asserted by the plaintiff in this matter. Plaintiff's state law claims are dismissed without prejudice.

Therefore;

IT IS ORDERED that summary judgment be granted in favor of Wal-Mart, dismissing plaintiff's federal claims with prejudice.

IT IS FURTHER ORDERED that the Court declines to exercise jurisdiction on the plaintiff's state law claims, and plaintiff's state law claims are dismissed without prejudice.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on plaintiff's state law claims is denied as moot without prejudice.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, _____, 2008.

_____
FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA